# WALTER M. EHRHARDT v. WELLS, FARGO & COMPANY.[1]

## July 14, 1916.

## Nos. 19,821—(211).

**False imprisonment — evidence.**
1. The evidence establishes the false imprisonment of the plaintiff.

**Same — liability of defendant.**
2. The evidence sustains a finding that the defendant was responsible for the false imprisonment of the plaintiff by certain officers upon the ground that it authorized it; and, if the defendant did not previously authorize the imprisonment, but, knowing of it, directed its continuance, and pursuant to its direction the imprisonment was continued, it is liable upon the ground of adoption or ratification.

**New trial — damages not excessive.**
3. The verdict is not so large as to require a new trial upon the ground that it is excessive.

Action in the district court for Ramsey county to recover $50,000 for false arrest. The case was tried before Michael, J., and a jury which returned a verdict for $4,250. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Frank B. Kellogg, Cordenio A. Severance, Robert E. Olds* and *Guy Chase,* for appellant.

*Barton & Kay,* for respondent.

SCHALLER, J.

Action for false imprisonment. Verdict for the plaintiff. Defendant appeals from the order denying its alternative motion for judgment or for a new trial.

1. On the night of December 12, 1913, a Wells, Fargo express car in a Southern Pacific train traveling on the line of the Illinois Central a few miles north of New Orleans, Louisiana, was robbed. Captain

[1] Reported in 158 N. W. 721.

Dodge, a special agent of the express company, had charge of the detection of those concerned in offenses against the company. He took charge of the situation. From the circumstances connected with the robbery he believed that one Tabor, who had been serving a term in the Texas penitentiary for a similar crime against the company, and who had escaped, was responsible for it. His judgment was correct. He knew that Tabor was on terms of some intimacy with one Growe, who lived in the parish of Jefferson, in which the robbery occurred, and who was a conductor on the Texas & Pacific Railroad. The plaintiff was brakeman under Growe. Captain Dodge had Growe's house watched. While it was being watched the plaintiff went there to see Growe on business connected with his duties as brakeman, and was seen by the watchman. Tabor was found at Growe's house and was arrested. A few hours afterwards the plaintiff was arrested.

This action is for false imprisonemnt. There was no criminal complaint filed against the plaintiff. He was taken into custody without a warrant. He was not prosecuted criminally. This is not an action for malicious prosecution or for the any prosecution, for there was none. The question of probable cause, in its usual sense, is not involved in the action for false imprisonment. Robie v. Canadian Northern Ry. Co. 101 Minn. 534, 111 N. W. 1134. The arrest was unlawful. It may be conceded that in Louisiana, as here and elsewhere, an officer may arrest for a felony without a complaint or warrant. See G. S. 1913, § 9066 (R. L. 1905, § 5229). This does not change the situation. As a matter of law there was no probable cause for a criminal prosecution. The defendant did not justify the arrest at the trial. There being no cause for the arrest, it was unlawful and the imprisonment which followed was unlawful. 1 Cooley, Torts (3d ed.) 296; 1 Jaggard, Torts, 417; Nixon v. Reeves, 65 Minn. 159, 67 N. W. 989, 33 L.R.A. 506. The court so charged the jury. We think this was correct. No objection was made. In the conduct of the trial it seems to have been recognized that the arrest was unlawful.

2. The chief contest at the trial was upon the question whether the defendant was legally responsible for the imprisonment. That Captain Dodge had sufficient authority is not questioned. His authority was complete and whatever he did the company did.

Growe's house was watched by two deputy sheriffs. Captain Dodge arranged with the deputies and Captain Dodge paid them. These deputies saw the plaintiff go to Growe's house. A few hours after Tabor's arrest they arrested him. He was taken to jail and locked up until the next morning. Then he had an interview with the sheriff and Captain Dodge. He was put through a searching examination, and was in substance accused of complicity with Tabor and asked to confess. According to his testimony the sheriff, at the close of the examination, asked Captain Dodge what he wanted done with him. Captain Dodge said: "Better hold him for further investigation." He was returned to the jail. He remained there until the seventh of January, when he was taken before the court for examination under a statute permitting one held as a material witness to give a statement of his knowledge and obtain a release. That he was held as a witness during a portion of his confinement seems certain. He was finally released on January 9.

The court submitted to the jury the question whether the defendant was responsible for the imprisonment of the plaintiff. The evidence was sufficient to sustain an affirmative finding. The court instructed the jury that, though the defendant was not originally responsible for the arrest, still, if knowing that the arrest had been made in connection with the arrest of Tabor, Captain Dodge at the interview the next morning instructed the sheriff to detain him for further examination, and pursuant to his direction he was detained, that made the defendant liable. The instruction was correct. The facts recited constituted an adoption or ratification of the acts of the officers. Callahan v. Searles, 78 Hun, 238, 28 N. Y. Supp. 904. It may be noted that the activity of the defendant after the arrest in taking advantage of it and continuing the imprisonment had a tendency to show a prior authorization. Shattuck v. Bill, 142 Mass. 56, 7 N. E. 39. And of course all participating in the false imprisonment are liable as tort feasors just as those engaged in any tort. 1 Cooley, Torts (3d ed.) 319; 1 Jaggard, Torts, 421-423; 19 Cyc. 326.

3. It is claimed that the damages are excessive. The verdict was for $4,250. The plaintiff was arrested on December 19 and was not discharged until January 9. During the latter portion of that period at least he was held as a witness under the provisions of a Louisiana statute. Proper account of this was taken by the court in its charge. The plaintiff

was handcuffed when arrested and taken to the jail. If his story is true his surroundings in the jail were vile and he was physically neglected. In his interview with the sheriff and the agent of the defendant he was subjected to abuse. Tabor's arrest was a matter of notoriety. The plaintiff was mentioned in connection with it. Two of the New Orleans newspapers contained accounts of it. He was very much humiliated during his stay in jail and afterward. He suffered physically and lost considerably in weight. The court submitted to the jury the question of punitive damages. We cannot say that the verdict is excessive. See Price v. Minnesota, D. & W. Ry. Co. 130 Minn. 229, 153 N. W. 532; Union Depot & R. Co. v. Smith, 16 Colo. 361, 27 Pac. 329; Monjo v. Monjo, 53 Hun, 145, 6 N. Y. Supp. 132; Harris v. Louisville, N. O. & T. R. Co. 35 Fed. 116; Cuthbert v. Galloway, 35 Fed. 466; Clarke v. American Dock & Improvement Co. 35 Fed. 478.

Order affirmed.